UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERROD JEROME BEASLEY,

    Petitioner,

v.                                          Case No. 3:19-cv-663-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

    Respondents.

## ORDER

**I.   Status**

Petitioner, Herrod Jerome Beasley, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. He also filed a memorandum in support of his Petition (Doc. 4) and a "Motion to Consider Actual Innocence to Cure Petitioner's Procedural Default" (Doc. 3).[1] Petitioner is serving a forty-five-year term of incarceration, with a twenty-year minimum mandatory term, for attempted first degree murder. Respondents filed a

---

[1] The Court granted Petitioner's Motion (Doc. 3) to the extent that the Court advised it would consider Petitioner's claim of actual innocence when addressing the Petition. See Doc. 8. The Court addresses that claim when analyzing Respondents' timeliness argument.

Response arguing that the case is untimely filed and request dismissal with prejudice. See generally Doc. 10 (Resp.).[2] Petitioner replied. See Doc. 11. This case is ripe for review.

## II. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court

---

[2] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

> and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## III. Analysis

On May 3, 2007, a jury found Petitioner guilty of attempted first degree murder, with the special finding that Petitioner discharged and possessed a firearm during the commission of the offense. Resp. Ex. A at 78. The trial court sentenced Petitioner to a forty-five-year term of incarceration, with a twenty-year minimum mandatory term. Id. at 88-89. Petitioner, with help from appellate counsel, sought a direct appeal, and on April 14, 2008, the First District Court of Appeal per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. H. Petitioner's judgment and

3

sentence became final ninety days later, on Monday, July 14, 2008.[3] Petitioner's one-year statute of limitations began to run the next day, July 15, 2008.

Petitioner's one-year limitations period ran for 275 days until it was tolled on April 16, 2009, when Petitioner filed a Florida Rule of Criminal Procedure 3.800(a) motion.[4] Resp. Ex. I. Petitioner's one-year remained tolled until August 2, 2010, when the trial court granted Petitioner's pro se motion to voluntarily dismiss his April 16, 2009, Rule 3.800(a) motion. Resp. Exs. J, K. Petitioner's one-year statute of limitations resumed the next day, August 3, 2010, and expired ninety days later, on November 1, 2010.

While his Rule 3.800(a) motion was still pending, on June 25, 2010, Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion. Resp. Ex. P at 1. However, on February 19, 2015, the trial court dismissed with prejudice Petitioner's Rule 3.850 motion because it was untimely filed. Id. at 24-26; see Fla. R. Crim. P. 3.850(b). Because Petitioner's June 25, 2010, Rule 3.850 motion was untimely, it was not a "properly filed" pleading that statutorily tolled his one-year limitations period. See Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005)

---

[3] The ninetieth day fell on Sunday, July 13, 2008, thus Petitioner had until Monday, July 14, 2008, to file a petition for writ of certiorari with the United States Supreme Court. See Fed. R. Civ. P. 6(a)(1)(C).

[4] During the pendency of Petitioner's April 16, 2009, Rule 3.800(a) motion, Petitioner filed a petition with the First DCA alleging ineffective assistance of appellate counsel. Resp. Ex. L. The First DCA denied the petition on the merits, Resp. Ex. N, and on July 12, 2010, denied Petitioner's motion for rehearing, Resp. Ex. O. These proceedings have no effect on this Court's timeliness analysis.

(holding that a state postconviction motion rejected by the state court as untimely filed is not "properly filed" for purposes of § 2244(d)(2)); Webster v. Moore, 199 F.3d 1256, 1258 (11th Cir. 2000) (finding that state postconviction motion must meet state filing deadlines to toll the AEDPA statute of limitations).

Likewise, after the expiration of his federal statute of limitations, Petitioner filed with the trial court several other postconviction motions and a petition for belated appeal seeking review of the trial court's order dismissing his untimely June 25, 2010, Rule 3.850 motion. Resp. Exs. L; M; P at 35-61; Q. All postconviction motions were denied and the petition for belated appeal was granted, with all state court postconviction proceedings concluding on January 8, 2019, when the First DCA issued its mandate affirming the trial court's order dismissing the June 25, 2010, Rule 3.850 motion. Resp. Ex. U. Because there was no time left to toll, however, those state court postconviction proceedings did not toll the federal one-year limitations period. See Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) (stating that where a state prisoner files postconviction motions in state court after the AEDPA limitations period has expired, those filings cannot toll the limitations period because "once a deadline

5

has expired, there is nothing left to toll"). As such, the Petition, filed on May 31, 2019, is untimely filed by more than eight years.[5]

Petitioner acknowledges that his Petition is untimely filed, but he does not argue that he is entitled to equitable tolling, and he fails to allege any facts supporting due diligence or extraordinary circumstances. Doc. 1 at 13-14; Doc. 3. See Lawrence v. Florida, 549 U.S. 327, 336 (2007); Damren v. Florida, 776 F.3d 816, 821 (11th Cir. 2015). Instead, Petitioner tries to overcome the procedural bar by alleging he is actually innocent of attempted first degree murder. Doc. 1 at 5, 13-14; Doc. 3. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). To avoid the one-year limitations period based on actual innocence, Petitioner must "present new reliable evidence that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (quotations and citations omitted); see Schlup v. Delo, 513 U.S. 298, 327 (1995) (finding that to show actual

---

[5] In any event, even assuming Petitioner's one-year remained tolled until all state court postconviction proceedings were resolved on January 8, 2019, when the First DCA issued it mandate, Petitioner's one-year would have expired ninety days later, on April 8, 2019. Thus, the Petition, filed on May 31, 2019, is still untimely filed.

innocence, a petitioner must show "that it is more likely than not that no reasonable juror would have found [the p]etitioner guilty beyond a reasonable doubt").

Petitioner asserts he is actually innocent of attempted first degree murder because his conduct only amounted to aggravated assault. Doc. 3 at 1. In support of that allegation, Petitioner presents his own affidavit, in which he states he lacked premeditation and intent to kill the victim and "shot one single round in the air" to warn the victim that he needed to "stay away from [Petitioner's] family." Id. According to Petitioner, he believed that the victim murdered Petitioner's family member, so he obtained the firearm and got a ride to the victim's apartment to confront him. Id. Petitioner intended to merely tell the victim that if he was charged with the murder, Petitioner would testify against him in court; but when he saw the victim running out of his apartment, Petitioner shot the firearm in the air purely out of frustration. Id. Petitioner asserts he was in the military and is trained in using firearms, thus if Petitioner really intended to kill the victim, Petitioner could have easily done so. Id. He also contends that the victim would probably not have died given the distance between the two at the time of the shooting. Id. at 3-4. According to Petitioner, if his attorney would have allowed Petitioner to testify to these facts at trial, it would have rebutted the state's circumstantial evidence of guilt and "no reasonable juror would have found him guilty of attempted first degree

7

premeditated murder." Id. at 4. Thus, he argues that the Court should overlook the procedural bar in this case.

The actual innocence "exception is exceedingly narrow in scope, as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001). Here, Petitioner bases his actual innocence theory on alleged "new" evidence legally sufficient to support only a conviction for aggravated assault, a lesser included offense for attempted first degree murder. However, this allegation is not a cognizable actual innocence claim under Schup because it only supports "legal innocence" rather than the required "factual innocence." See, e.g. Rozelle, 672 F.3d at 1015 (concluding that, in the context of a timeliness analysis, the petitioner "fail[ed] to state a cognizable actual innocence claim" and reasoning that "the narrow and extraordinary nature of Schlup's actual innocence 'gateway' does not extend to petitioners . . . who did the killing and whose alleged 'actual innocence' of a non-capital homicide conviction is premised on being guilty of only a lesser degree of homicide").

Further, even if Petitioner presented a cognizable claim of actual innocence, there is a presumption that the jury resolved any conflicting inferences in the evidence, and the Court defers to the jury's finding that Petitioner committed attempted first degree murder. Notably, at trial, four eyewitnesses testified that they saw Petitioner aim a firearm directly at the

8

victim before shooting a single round in his direction. Resp. Ex. C at 141, 171-72, 207-08, 233-24. One of those eyewitnesses was a police officer who responded to the victim's earlier 911 call reporting two suspicious males who knocked on the victim's apartment door looking for the victim. Id. at 230-34. The officer was escorting the victim and his girlfriend to their vehicle when Petitioner emerged from a parked white BMW and shot at the victim. Id. at 233-34. According to the officer, the shooter was "about 20, 30 feet" away from the victim at the time of the shooting and "the gun was clearly pointed at [the victim]." Id. at 236. Petitioner then chased the victim on foot but could not shoot another round because the gun's magazine fell out of the firearm during Petitioner's pursuit. Id. at 241.

The jury also heard evidence that before the shooting, Petitioner's family member had been murdered and Petitioner thought the victim may have been involved in the murder. Id. at 135-36, 165-66. Defense counsel argued Petitioner did not participate in the offense and that the eyewitnesses misidentified Petitioner as the shooter, a version of events which Petitioner's current claim of actual innocence contradicts. Resp. Ex. D at 460-86. The trial court then instructed the jury on attempted first degree murder and the lesser included offense of aggravated assault; and the jury found Petitioner guilty of the former. Id. at 496-508; Resp. Ex. E at 522.

Petitioner now claims the jury would have disregarded the state's evidence of intent if Petitioner testified that he simply shot the firearm out of frustration. But he has not produced exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence not previously available. He has failed to point to any evidence to show it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt because of new evidence. The Court rejects Petitioner's actual innocence argument. The case is due to be dismissed as untimely.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1. The Petition (Doc. 1) and this case are **DISMISSED with prejudice**.

2. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of May, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:  Harrod Jerome Beasley, #J33990
    counsel of record

---

[6] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

11